UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Robert Bailey,

    Plaintiff,

vs.

Creekside Association, John Mesenbrink, Larry Gensmer, Premier Development, Inc.

    Defendants.

Case No.:

**JURY TRIAL DEMANDED**

---

This action is brought under the federal Fair Housing Act and the Minnesota Human Rights Act based on Defendants' refusal to grant Plaintiff's request for a reasonable accomodation of disability in housing. 42 U.S.C. § 3604(f)(3)(B); Minn. Stat. § 363A.10(2). Plaintiff, a double amputee confined to a motorized scooter, has been denied a dedicated, van-accessible handicapped parking space. Plaintiff Robert Bailey, for his Complaint against Defendants, states and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a), and 42 U.S.C. § 3613 (a)(1)(A).

2. Because Defendants reside in the State of Minnesota, venue is proper under 28 U.S.C. § 1391.

### PARTIES

3. Plaintiff Robert Bailey is currently a resident of Apartment 101 at Creekside Condominiums, which is located at 16520 Tranquility Court SE, Prior Lake, Minnesota, 55372-4471. Before residing at Creekside Condominiums, Mr. Bailey was a resident at a nearby building, Creekside Apartments, which is located at 16535 Tranquility Court SE.

4. Defendant Larry Gensmer is the owner and CEO of Defendant Premier Development, Inc. Defendant Gensmer owns Apartment 101 at Creekside Condominiums and leases the property to Plaintiff Bailey through Premier Development, Inc. Upon information and belief, Larry Gensmer resides in Prior Lake, Minnesota.

5. Defendant Premier Development, Inc. is the management company listed on Mr. Bailey's current lease. Premier Development is listed as the owner of other apartments at Creekside Condominiums on local property records. Premier Development is incorporated under the laws of the State of Minnesota and has its principal place of business in Minnesota.

6. Defendant Creekside Association is the condominium association for Creekside Condominiums. The association has responsibility for two buildings: 16520 Tranquility Court—the building that Mr. Bailey lives in—and a nearby condominium building, 16510 Tranquility Court. Creekside Association is incorporated in Minnesota as a non-profit corporation. Creekside Association is comprised of Minnesota residents and conducts its meetings in Minnesota.

7. Defendant John Mesenbrink is the president of Creekside Association. He also owns Mesenbrink Construction and Engineering, which is listed as the owner of several units in the building at 16520 Tranquility Court. Upon information and belief, when Creekside Condominiums was constructed, Premier Development and Mesenbrink Construction and Engineering each owned a one-half interest in each building and divided the condominium units between them.

## FACTS

8. Mr. Bailey is a 71 year old retiree and a veteran of the United States Army.

9. Mr. Bailey has a physical disability. Both of Mr. Bailey's legs have been amputated. His right leg has been amputated above the knee and his left leg has been amputated below the knee. Mr. Bailey also suffers from diabetes.

10. Mr. Bailey has a handicap as defined by the federal Fair Housing Act.

11. Mr. Bailey is disabled as defined by the Minnesota Human Rights Act.

12. Mr. Bailey cannot walk; he uses a motorized scooter as his only source of mobility outside of the motor vehicle he owns, which is a minivan.

13. Mr. Bailey's minivan is specially equipped with numerous hand controls, which allow him to operate the vehicle. The minivan is also equipped with a special motorized ramp, which deploys from the sliding door on the side of the van, so Mr. Bailey can enter and exit the vehicle.

14. In order for the van's ramp to properly deploy, Mr. Bailey's vehicle requires a "van-accessible" parking space. A van-accessible parking space has a special, eight-foot-wide aisle adjoining one side of the space. This adjacent aisle allows ample room for the ramp to deploy without obstruction and for Mr. Bailey to safely enter and exit the minivan.

15. A non-accessible space does not allow Mr. Bailey's minivan ramp to safely deploy, for the minivan's ramp will collide with any vehicle parked in an adjacent space, and he will be unable to enter and exit his vehicle.

### Defendants Deny Plaintiff Bailey Accessible Parking at Creekside Condominiums

16. Creekside Condominiums is a private condominium complex where the units are intended to be sold to individual owners. In the building in which Mr. Bailey lives, there are 24

condominium units and 28 parking spaces. Not all of the units have been sold. Several units are being leased and some are vacant.

17. Plaintiff moved into his current unit at Creekside Condominiums on January 15, 2008.

18. Plaintiff signed a three-year lease on Apartment 101 that expires on February 1, 2011.

19. Plaintiff pays $1,000 per month in rent. The monthly condominium association dues are included in this amount.

20. Mr. Bailey's building at Creekside Condominiums has a private, underground, heated garage with 28 parking spaces for the 24 condominium units, plus a space that is marked as the handicapped space. Each unit at Creekside Condominiums unit has a designated parking space assigned to it in that garage. Access to the garage is controlled by a remote control given to residents.

21. There is only one parking space in the garage that is marked for handicapped use. This parking space is a van-accessible space that is connected to an aisle, which allows ample room for Mr. Bailey's minivan ramp to deploy.

22. When Plaintiff Bailey moved in, he was assigned parking space #101, which is his current space. This space is not van-accessible; it is bordered on each side by parking spaces assigned to other residents and those spaces are constantly occupied by vehicles. Space # 101 is only eight feet wide and the minivan's ramp cannot deploy without colliding with the vehicles parked in adjacent spaces, which makes it impossible for Mr. Bailey to enter and exit his minivan.

23. When Mr. Bailey moved into the building, he inquired about using the designated handicapped space. He was informed by John Mesenbrink that he could not use the handicapped space because it was intended for other residents to use in unloading groceries or other items from their cars, or for emergency use.

24. Mr. Bailey made several written requests to Defendant Gensmer, the first on May 18, 2008, requesting a parking space in the garage that would accommodate the use of his van. Mr. Bailey also made a request for this reasonable accomodation to Defendant Creekside Association via a letter to Defendant Mesenbrink on September 2, 2008.

25. Mr. Bailey requested an accessible parking space as a reasonable accomodation which was necessary, in light of his handicap, to afford him an equal opportunity to use and to enjoy his dwelling. The Defendants denied those requests.

26. The accomodation that Mr. Bailey requested from Defendants is reasonable. No change to the existing layout of the parking garage is required and no other residents require a van-accessible parking space. Furthermore, no other residents would be displaced from their current parking assignments.

27. By refusing to provide Mr. Bailey a parking space at Creekside Condominiums, 16520 Tranquility Court SE, Defendants violated the Fair Housing Act, as amended, 42 U.S.C. § 3604(f)(3)(B), in that they refused to make a reasonable accommodation in their rules, policies, practices, or services, when such an accommodation was necessary to afford Mr. Bailey equal opportunity to use and enjoy a dwelling.

### Retaliation

28.     In separate letters dated September 2, 2008, Mr. Bailey notified Defendants that if he did not receive exclusive use of a van-accessible space in the garage, he would seek relief under the applicable laws.

29.     After receiving the letter, Defendant John Mesenbrink, the president of the Creekside Association, called Mr. Bailey on or about September 6 on the telephone and told him that the funds for defending any lawsuit would come out of the funds of Creekside Association and that money might not be left over for maintenance. Mr. Mesenbrink attempted to intimidate Mr. Bailey, telling him that he had already spoken to the condominium association's lawyers, which already had created legal expenses the association would have to pay, and that Mr. Bailey would have to explain it to his neighbors if the costs incurred from the lawsuit made maintenance, lawn care and snow care unavailable. Defendant's statements were retaliatory and designed to prevent plaintiff from enforcing his statutory rights.

30.     Defendant Mesenbrink then told other members of the association board that Mr. Bailey was suing the condominium association and that a lawsuit would place the association dues at risk. Mr. Bailey has been confronted by several of his neighbors about the potential lawsuit situation. The neighbors have all expressed concern that necessary maintenance, including lawn care and snow removal, will not be performed and insurance premiums will not be paid if Mr. Bailey goes through with the lawsuit. Defendant's statements were retaliatory and designed to prevent Mr. Bailey from enforcing his statutory rights.

31.     As a result of these confrontations and the difficulty in obtaining accessible parking, Mr. Bailey is experiencing high levels of stress. Shortly after these confrontations, Mr. Bailey suffered an outbreak of shingles. His doctor has told him that the outbreak is related to

the stress arising from the parking situation and from the confrontations with neighbors and Defendant Mesenbrink.

### Previous Discrimination

32.     Prior to moving into his current apartment. Plaintiff Bailey was a resident at the nearby apartment complex, Creekside Apartments, 16535 Tranquility Court, SE APT 12. He had been a resident there since October 2003.

33.     Creekside Apartments, unlike Creekside Condominiums, is an apartment complex. The units in that building are all rented to tenants.

34.     Mr. Bailey had similar parking problems at Creekside Apartments, which is also owned by interests controlled by Defendants Gensmer and Mesenbrink. In the parking garage at Creekside Apartments, the area attached to his space for the van-accessible ramp to be lowered was blocked by the personal belongings of another tenant.

35.     After complaining to the management company about the obstruction of his parking space, Plaintiff received written notice on October 31, 2007, that his lease was not being renewed and that his tenancy would terminate on the same day. This notice was received within ninety days of Plaintiff's last complaint that he could not reliably use his disabled-accessible parking place.

36.     Plaintiff filed a tenant remedies action in Scott County, Minnesota in December 2007. Prior to the hearing, Plaintiff agreed to accept a lease in the condominium in which he currently lives and cancel the hearing in Scott County.

37.     As a result of Defendants' conduct as described above, Mr. Bailey has suffered damages.

38. The discriminatory actions of Defendants were intentional, willful, and taken in disregard for the rights of Mr. Bailey.

## COUNT I

## DISCRIMINATION ON THE BASIS OF DISABILITY

Plaintiff realleges and incorporates by reference preceding paragraphs 1-38.

39. Plaintiff is an individual with a handicap as defined under the federal Fair Housing Act, 42 U.S.C. § 3602(h).

40. Plaintiff requested a reasonable accommodation pertaining to a van-accessible parking space.

41. The requested reasonable accommodation is necessary because of Plaintiff's disability.

42. The requested reasonable accommodation is necessary to ensure Plaintiff equal opportunity to use and to enjoy his dwelling.

43. The requested accomodation does not create an undue administrative or financial burden on the Defendants.

44. Defendants refused to make this reasonable accomodation to their rules, policies, practices and services.

45. Defendants' denial of the reasonable accommodation constitutes illegal discrimination on the basis of disability, 42. U.S.C. § 3604(f)(3)(B) and is a discriminatory housing practice. 42. U.S.C. § 3602(f).

46. As a result of Defendants' conduct as described above, Mr. Bailey has suffered damages.

47. The discriminatory actions of Defendants were intentional, willful, and taken in disregard for the rights of Mr. Bailey.

80350663.1                                                    8

48.     Unless Defendants are enjoined temporarily, preliminarily, and thereafter permanently from denying Plaintiff's reasonable accomodation request, Plaintiff will continue to suffer immediate, substantial and irreparable harm.

## COUNT II

**(Against Defendants John Mesenbrink and Creekside Association)**

## INTERFERENCE, COERCION AND INTIMIDATION OF INDIVIDUAL IN EXERCISE OF RIGHT UNDER FAIR HOUSING ACT

Plaintiff realleges and incorporates by reference preceding paragraphs 1-38.

49.     After Plaintiff's request for a reasonable accomodation to the condominium association's policy for a handicapped-accessible parking space was denied, Plaintiff expressed his intention to investigate legal action to exercise and enjoy his rights under the federal Fair Housing Act.

50.     Defendants intimidated, interfered with, and coerced Plaintiff in violation of 42 U.S.C. § 3617.

51.     As a result of Defendants' conduct as described above, Mr. Bailey has suffered damages.

52.     The actions of Defendants were intentional, willful, and taken in disregard for the rights of Mr. Bailey.

## COUNT III

## DISCRIMINATION ON THE BASIS OF DISABILITY

## UNDER MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges and incorporates by reference preceding paragraphs 1-38.

53. Plaintiff is an individual with a disability as defined under the Minnesota Human Rights Act, Minn. Stat. § 363A.03, subd. 12.

54. Plaintiff requested a reasonable accommodation pertaining to a van-accessible parking space. The requested reasonable accommodation is necessary because of Plaintiff's disability.

55. The requested reasonable accommodation is necessary to ensure Plaintiff equal opportunity to use and to enjoy his dwelling.

56. The requested reasonable accomodation does not create an undue administrative or financial burden on the Defendants.

57. Defendants refused to make this reasonable accomodation to their rules, policies, practices and services.

58. Defendants' denial of the reasonable accommodation constitutes illegal discrimination on the basis of disability. Minn. Stat. § 363A.10(2).

59. As a result of Defendants' conduct as described above, Plaintiff has suffered damages.

60. The discriminatory actions of Defendants were intentional, willful, and taken in disregard for the rights of Plaintiff.

61. Unless Defendants are enjoined temporarily, preliminarily, and thereafter permanently from denying Plaintiff's reasonable accomodation request, Plaintiff will continue to suffer immediate, substantial and irreparable harm.

## COUNT IV

**(Against Defendants John Mesenbrink and Creekside Association)**

### INTENTIONAL ENGAGEMENT IN REPRISAL UNDER MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges and incorporates by reference preceding paragraphs 1-38.

62. After Plaintiff's request for a reasonable accomodation to the condominium association's policy for a handicapped-accessible parking space was denied, Plaintiff expressed his intention to investigate legal action to enforce his rights under the Minnesota Law.

63. Defendants engaged in a reprisal against Plaintiff.

64. Defendants intimidated, retaliated against, and harassed Plaintiff.

65. Defendants engaged in unfair discriminatory practices in violation of Minnesota Human Rights Act, Minn. Stat. § 363A.15.

66. As a result of Defendants' conduct as described above, Plaintiff has suffered damages.

67. The discriminatory actions of Defendants were intentional, willful, and taken in disregard for the rights of Plaintiff.

### RELIEF

WHEREFORE, Plaintiff Robert Bailey respectfully requests that this Court enter an ORDER that:

1. Issues a preliminary and a permanent injunction, granting Plaintiff exclusive use of the van-accessible handicapped space, pursuant to 42 U.S.C. § 3613(c)(1).

2. Declares that the discriminatory housing practices of Defendants, as set forth above, violated the Fair Housing Act, as amended, 42 U.S.C. §§ 3602-3619.

3. Declares that the discriminatory housing practices of Defendants, as set forth above, violated the Minnesota Human Rights Act.

4. Requires Defendants to provide Plaintiff with an accessible garage parking space in the garage at 16520 Tranquility Court, Creekside Condominiums, which will allow his ramp to properly deploy and his motorized scooter to enter and exit his minivan without interference from other vehicles.

5. Awards such damages as will fully compensate Plaintiff for injuries caused by Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3613(c)(1) and Minn. Stat. §363A.29 (4).

6. Awards punitive damages to Plaintiff pursuant to 42 U.S.C. § 3613(c)(1) and Minn. Stat. §363A.29 (4).

7. Awards to Plaintiff damages, including, but not limited to, mental anguish and suffering, pursuant to Minn. Stat. §363A.29 (4)

8. Awards to Plaintiff attorneys' fees and costs, pursuant to 42 U.S.C. § 3613(c)(2) and Minn. Stat. §363A.33 (7).

9. Awards to Plaintiff such additional relief as the Court deems just and proper.

DATED: March 19, 2009

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _/s/_____
Thomas C. Kayser, 5415X
David E. Nardolillo, 338108

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
612-349-8500

**ATTORNEYS FOR PLAINTIFF**